**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**(Houston Division)**

| | | |
|---|---|---|
| **TICKETEVENTS.COM, LLC** | * | **DOCKET NO.** |
| | * | |
| **v.** | * | **DISTRICT JUDGE:** |
| | * | |
| **M & E ENDEAVOURS, LLC** | * | **MAGISTRATE:** |
| **MAHESH SALGAONKAR** | * | |
| **PAUL LEE** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>VERIFIED COMPLAINT</u>

Plaintiff, TicketEvents.com, LLC, avers the following in support of its Verified Complaint:

## I. <u>INTRODUCTION</u>

1.

This is a civil action brought by TicketEvents.com, L.L.C. ("TicketEvents") pursuant to the provisions of the Racketeer Influence and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961, *et seq.*), the Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code §§134.001-134.005), fraud (*See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011), breach of contract (*See B&W Sup. V. Beckman*, 305 S.W.3d  10, 16 (Tex. App.- Houston [1st Dist.])), and conversion (*See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997) concerning actions collectively perpetrated by Defendants M&E Endeavours, LLC ("M & E Endeavours"), Mahesh Salgaonkar ("Salgaonkar"), and Paul Lee ("Lee").

2.

From in or near March 2015, continuing to the date of the filing of this Verified Complaint, the Defendants have constituted an associated-in-fact enterprise and have perpetrated a scheme and artifice to defraud TicketEvents through a series of illegal acts including mail and wire fraud.  In addition, the Defendants' actions constitute theft under the Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code §§134.001-134.005), fraud (*See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011), breach of contract (*See B&W Sup. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.- Houston [1st Dist.])), and conversion (*See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).

3.

From in or near March 2015, continuing to the date of the filing of this Verified Complaint, the Defendants solicited money from the Plaintiff, TicketEvents, on five (5) separate occasions in exchange for tickets for various sporting events held at NGR Stadium (f/k/a "Reliant Stadium") located at Reliant Pkwy., Houston, Texas 77054.

4.

In turn, the Plaintiff, TicketEvents, mailed five (5) separate checks totaling $39,000 to the Defendants.  The Defendants deposited the Plaintiff's checks at a financial institution in the State of Texas which were then drawn on Plaintiff's account at a financial institution in the State of Pennsylvania.

5.

The Defendants, however, failed to provide the event tickets to the Plaintiff; instead; the Defendants continued to lull the Plaintiff into believing that the Plaintiff was not being defrauded thereby allowing the Defendants the ability to extend their scheme in time and scope.

6.

Eventually, the Defendants offered a "refund" of sorts.  To this end, on or about August 13, 2015, the Defendants drafted and sent two (2) worthless checks to the Plaintiff.

7.

As detailed in this Complaint, the Defendants violated Title 18, United States Code, Section 1962(c), the Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code §§134.001-134.005), fraud (*See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011), breach of contract (*See B&W Sup. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.- Houston [1st Dist.])), and conversion (*See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).

## II. JURISDICITON

8.

Pursuant to 28 U.S.C § 1331 and 18 U.S.C. § 1964(c), subject matter jurisdiction is present in this matter as it involves a federal question.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted by the Plaintiff because these state law claims arise out of the same set of operative facts and are so related to the Plaintiff's RICO claims that they form part of the same case or controversy.

### III. <u>VENUE</u>

9.

Venue is proper in this judicial district pursuant to 28 U.S.C §1391(b) because M&E Endeavours is a Texas limited liability company, upon information and belief, Salgaonkar and Lee reside in this judicial district, and a substantial part of the events giving rise to this claim occurred in this judicial district.

10.

Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965(a) because M&E Endeavours, Salgaonkar, and Lee conducted their affairs in this judicial district.

### IV. <u>PARTIES</u>

11.

Plaintiff, TicketEvents, is a Pennsylvania limited liability company whose address is 466 Germantown Pike, Lafayette Hill, Pennsylvania, 19444.

12.

Defendant, M&E Endeavours, is a Texas limited liability company whose address is 3150 Fondren Road, Houston, Texas 77063.

13.

Defendant, Mahesh Salgaonkar, is an adult resident of Houston, Texas.   Upon information and belief, Mahesh Salgaonkar owns and operates M&E Endeavours and also acts as its Chief Executive Officer.

14.

Defendant, Paul Lee, is an adult resident of Houston, Texas.   Upon information and belief, Paul Lee is or was at all pertinent times employed by M&E Endeavours as its General Manager and works under the direction of Mahesh Salgaonkar.

## IV. BACKGROUND

15.

On or about March 26, 2015, M&E Endeavours and TicketEvents entered into a contract for the sale and purchase of 18 luxury suite tickets (including three (3) parking passes) for the event commonly known as *Texas A&M v. Arizona State* NCAA Football game to be held at NGR Stadium in Houston, Texas on September 5, 2015.  *See* contract evidencing this transaction attached hereto as Exhibit "A."   The contract stipulated the purchase price to be $9,000 with payment due from the Plaintiff to the Defendant M&E Endeavours.

16.

On or about March 27, 2015, the Plaintiff forwarded a company check in the amount of $9,000 to Defendant M&E Endeavours via Federal Express ("FedEx") (a commercial interstate carrier).  *See* Plaintiff's check attached hereto as Exhibit "B" and FedEx receipt attached hereto as Exhibit "C."   In turn, the Defendants caused to be deposited and did deposit Plaintiff's $9,000 check into a bank account which Defendants controlled.  This action caused an interstate wire transmission to occur between one state and another.

17.

On or about April 29, 2015, M&E Endeavours and TicketEvents entered into a contract for the sale and purchase of eighteen (18) luxury suite tickets (including three (3) parking passes)

for two events commonly known as: *Houston Texans v. Tampa Bay Buccaneers* and *Houston Texans v. Tennessee Titans*, both NFL Football games to be held at NGR Stadium in Houston, Texas on September 27, 2015 and November 1, 2015, respectively.  *See* contract evidencing this transaction attached hereto as Exhibit "D."

18.

The Contract stipulated the purchase price to be $16,000 with half payment due immediately and the balance due "once the tickets in the Seller's hands."  *See* Exhibit "D" p. 1.

19.

On or about April 29, 2015, the Plaintiff forwarded a company check in the amount of $8,000 to Defendant M&E Endeavours via Federal Express ("FedEx") (a commercial interstate carrier).  *See* Plaintiff's check attached hereto as Exhibit "E" and FedEx receipt attached hereto as Exhibit "F."   In turn, the Defendants caused to be deposited and did deposit Plaintiff's $8,000 check into a bank account which the Defendants controlled.  This action caused an interstate wire transmission to occur between one state and another.

20.

On or about July 9, 2015, M&E Endeavours and TicketEvents entered into a contract for the sale and purchase of 14 tickets, four (4) luxury suite tickets (including three (3) parking passes) for the event commonly known as *Houston Texans v. Indianapolis Colts* NFL Football game to be held at NGR Stadium in Houston, Texas on October 8, 2015.  *See* contract evidencing this transaction attached hereto as Exhibit "G."

21.

The Contract stipulated the purchase price to be $14,000 with half payment due immediately and the balance due "when Seller ships tickets to Buyer."  *See* Exhibit "G" p. 1.

22.

On or about July 10, 2015, the Plaintiff forwarded a company check in the amount of $7,000 to Defendant M&E via Federal Express ("FedEx") (a commercial interstate carrier).  *See* Plaintiff's check attached hereto as Exhibit "H" and FedEx receipt attached hereto as Exhibit "I." In turn, the Defendants caused to be deposited and deposited Plaintiff's $7,000 check into a bank account which Defendants controlled.  This action caused an interstate wire transmission to occur between one state and another.

23.

On July 21, 2015, the Plaintiff forwarded a company check in the amount of $15,000 to Defendant M&E via Federal Express ("FedEx") (a commercial interstate carrier).  *See* Plaintiff's check attached hereto as Exhibit "J" and FedEx receipt attached hereto as Exhibit "K."  This check for $15,000 represented the final payment of $8,000 for the April 29, 2015 Contract (Exhibit "D") and $7,000 for the July 9, 2015 Contract (Exhibit "G").  In turn, the Defendants caused to be deposited and deposited Plaintiff's $15,000 check into a bank account which Defendants controlled.  This action caused an interstate wire transmission to occur between one state and another.

24.

Although the Plaintiff delivered to the Defendants the payments called for in the three (3) contracts, the Defendants failed to deliver any tickets to the Plaintiff.  Instead, the Defendants

lulled the Plaintiff by repeatedly promising delivery of the tickets in multiple interstate telephone calls and in multiple interstate text messages. Particularly, Defendants Lee and Salgaonkar personally made multiple representations that the tickets were being sent via Federal Express delivery, none of which were true.  Ultimately, Defendants drafted and sent two (2) checks to the Plaintiff as an alleged partial refund.  *See* "Refund" checks attached hereto as Exhibit "L."  First on or about July 4, 2015, the Defendants drafted and sent, via Federal Express ("FedEx") (a commercial interstate carrier), a check in the stated amount of $15,000.  Next, on or about August 13, 2015, the Defendants sent, via Federal Express ("FedEx") (a commercial interstate carrier), a check in the stated amount of $15,000.  However, both of the Defendants' checks were worthless as evidenced by the "non sufficient funds" designation on the returned checks.  *See* Exhibit "L." Defendants made multiple representations that they would make good on the worthless checks, via interstate telephone and text message communications, none of which were truthful or accurate.

### 25.

On or about August 5, 2015, the Plaintiff made a written demand upon the Defendants; however, to date, the Defendants have not returned any of the stolen personal property ($39,000) to the Plaintiff except for a recent payment of $5,000 made on or about September 21, 2015.  *See* written demand attached hereto as Exhibit "M."

### 26.

As a result of the Defendants' conduct as outlined above, Plaintiff had to purchase replacement tickets from alternative sources at a total cost of $42,000 to satisfy agreements to sell those tickets to third parties.

**V. <u>COUNT 1</u>**
**(Federal Civil Rico - 18 U.S.C. § 1962(c))**

27.

Plaintiff incorporates by reference the allegations of preceding paragraphs as if set forth verbatim herein.

28.

Beginning in or near March 2015 and continuing to the date of the filing of this Verified Complaint, the Defendants' actions constitute violations of the Racketeering Influenced and Corrupt Organizations Act, commonly known as the "RICO" Act, governed by 18 U.S.C. § 1961-1968.

29.

The Defendants are RICO "persons" as defined by 18 U.S.C. § 1961(3).  This Count is against all Defendants named in this Verified Complaint.

30.

An enterprise includes any individual, partnership, corporation, association or other legal entity engaged in a pattern of unlawful conduct.  The Defendants' Enterprise is an enterprise engaged in and whose activities affected interstate commerce.  Defendants were and continue to be associated-in-fact with the enterprise formed on the common or shared purpose of defrauding Plaintiff and to obtain an unlawful monetary gain by defrauding Plaintiff to the Defendants' individual and shared benefit.

31.

Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

32.

An enterprise affects interstate or foreign commerce if the enterprise engages in or has an effect on commerce between the states or between the states and foreign countries. The Defendant's Enterprise's activities affected interstate commerce because it used interstate wires, interstate mailings, and other activity which crossed state lines on multiple occasions through the execution of the scheme to defraud.

33.

Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail and wire fraud which are predicate acts of the "pattern of racketeering activity" that forms the basis of the RICO claim.

34.

A "pattern of racketeering activity" requires that the Defendants commit at least two acts of "racketeering activity within ten years of each other."

35.

The continuous and related acts of mail and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

36.

Defendants violated the mail fraud statute, 18 U.S.C. §1341, when they devised a scheme and artifice to defraud and executed and attempted to execute that scheme by using mail matter deposited with the United States Postal Service and/or a private or commercial interstate carrier.

37.

Defendants also violated the mail fraud statute, 18 U.S.C. §1341, when they attempted to obtain money by means of false and fraudulent pretenses, representations, or promises and using mail matter deposited with the United States Postal Service and/or a private or commercial interstate carrier.

38.

As detailed above, from in or near March 2015 to September 2015, the Defendant used mail matter deposited with the United States Postal Service and an interstate commercial carrier to defraud the Plaintiff on multiple occasions throughout this period.

39.

Defendants violated the wire fraud statute, 18 U.S.C. § 1343, when they devised a scheme and artifice to defraud and executed and attempted to execute that scheme by using interstate wire communications.

40.

Defendants also violated the wire fraud statute, 18 U.S.C. § 1343, when they attempted to obtain money by means of false and fraudulent pretenses, representations, or promises and using interstate wire communications.

41.

As detailed above, from in or near March 2015 to September 2015, the Defendants used and caused multiple, interstate wire communications to occur which traveled from one state to another in order to defraud the Plaintiff on multiple occasions throughout this period.

42.

The Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

43.

As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Plaintiff has been injured in their business and property in that: (1) the Defendants defrauded the Plaintiff of $39,000, which caused Plaintiff to expend $42,000 to satisfy obligations to its customers; and (2) the Defendants have caused the Plaintiff to suffer additional economic damages to its business as a result of the Defendants' fraudulent activities detailed above.

44.

This count is being brought under 18 U.S.C. § 1962(c).  Under the provisions of § 1962(c), Defendants are jointly and severally liable to Plaintiff for three times the damages that it has sustained as a direct and proximate result of Defendants' conduct, plus costs of bringing this suit, including reasonable attorneys' fees.

## VI. <u>COUNT 2</u>
### (Texas Theft Liability Act - Tex. Civ. Prac. & Rem. Code §§134.001-134.005)

45.

Plaintiff incorporates by reference the allegations of preceding paragraphs as if set forth verbatim herein.

46.

Plaintiff is the rightful owner of $39,000 which it delivered to the Defendants in exchange for tickets to multiple events as detailed above.  In violation of Section 31.03(a) of the Texas Penal Code, the Defendants committed the offense of unlawfully appropriating the Plaintiff's personal property with the intent to deprive the Plaintiff (owner) of its property.  The Plaintiff's property is a thing of value as provided by Section 31.01(5)(C) of the Texas Penal Code.  The Defendants appropriated the Plaintiff's property without the Plaintiff's effective consent as provided in Section 31.03(b)(1) of the Texas Penal Code.  Further, the Defendants' offense represents a felony of the third degree as provided by Section 31.03(e)(5) of the Texas Penal Code.

47.

As a result of the Defendants unlawful misappropriation of the Plaintiff's property, the Plaintiff has suffered damages.  Pursuant to Section 134.005(a)(1) of the Texas Civil Practice and Remedies Code, the Plaintiff is entitle to recover its actual damages resulting from the Defendants theft as described above and, in addition to the actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000.

48.

Further, pursuant to Section 124.005(b) of the Texas Civil Practice and Remedies Code, the Plaintiff is also entitled to recovers its reasonable attorneys' fees and costs of suit.

### VII. <u>COUNT 3</u>
**(Fraud)**

49.

Plaintiff incorporates by reference the allegations of preceding paragraphs as if set forth verbatim herein.

50.

From in or near March 2015, continuing to the date of the filing of this Verified Complaint, the Defendants made multiple, false material representations to the Plaintiff as detailed above.   The Defendant knew the representation was false, and/or made the representation recklessly, as a positive assertion, and without knowledge of its truth.   The Defendant made these representations with the intent that the Plaintiff act on these representations.  The Plaintiff relied on the Defendants' numerous misrepresentations and these misrepresentations caused the Plaintiff to suffer injury.  As detailed above, the Defendants lured the Plaintiff into sending five (5) separate checks totaling $39,000 in exchange for tickets to various events.   The Plaintiff relied upon the Defendants' representations in providing its personal property to the Defendants.  However, the Defendants defrauded the Plaintiff by failing to provide the tickets as promised, and failing to provide any refund to the Plaintiff.

51.

As a direct and proximate cause of the Defendants' fraudulent conduct, the Plaintiff has suffered and continues to suffer damages including, but not limited to the loss of the misappropriated funds ($39,000), lost profits, and fees and costs incurred as a result of the fraud.

### VIII. COUNT 4
### (Breach of Contract)
### (M&E Endeavours only)

52.

Plaintiff incorporates by reference the allegations of preceding paragraphs as if set forth verbatim herein.

53.

As set forth above, three (3) valid and enforceable contracts existed between M&E Endeavours and TicketEvents.  The Plaintiff performed all of its contractual obligations.  By reasons of the foregoing acts, M&E Endeavours breached or otherwise failed to perform its contractual obligations set forth in the three (3) contracts.  As a result of the breaches by M&E Endeavours, the Plaintiff has suffered damages in the amount of $42,000, plus damage to its business reputation in an amount to be proven at trial, plus attorney's fees recoverable under the terms of the contracts, in an amount to be proven at trial.

### IX. COUNT 5
### (Conversion)

54.

Plaintiff incorporates by reference the allegations of preceding paragraphs as if set forth verbatim herein.

55.

Plaintiff is the owner certain personal property, to wit: $39,000 transferred via check from the Plaintiff to the Defendants via five (5) separate transactions as detailed above.  The Defendants knowingly, intentionally, and maliciously exercised dominion and control over the Plaintiff's personal property by obtaining the five (5) separate checks, depositing the checks into a bank account controlled by the Defendants without ever providing the promised event tickets to the Plaintiff.  As a result, the Plaintiff has suffered damages (injury).

56.

On or about August 5, 2015, the Plaintiff made a written demand upon the Defendants; however, to date, the Defendants have not returned any of the stolen personal property ($39,000) to the Plaintiff.  *See* Exhibit "M."

57.

Plaintiff seeks its actual damages caused by the Defendants' conversion of Plaintiff's personal property in the amount of $39,000 plus any and all lost profits and resulting damages. *See Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App, - Corpus Christi 1992).

58.

Further, as a result of the Defendants' knowing, intentional, and malicious conversion of the Plaintiff's personal property, the Plaintiff seeks exemplary damages.  *See Security State Bank v. Valley Wide Elec. Sup.*, 752 S.W.2d 661, 665 (Tex. App. – Corpus Christi 1988).

16

59.

Plaintiff demands a trial by jury on all issues so triable.

## X. PRAYER FOR RELIEF

Accordingly, Plaintiff, TicketEvents.com, L.L.C., requests that:

a.      Defendants, M&E Endeavours, LLC, Mahesh Salgaonkar, and Paul Lee, be duly cited and served with a copy of this Complaint and be required to answer same in accordance within the delays provided by law;

b.      After due delays and proceedings had, there be Judgment in favor of Plaintiff and against Defendants, M&E Endeavours, LLC, Mahesh Salgaonkar, and Paul Lee jointly and severally for any and all damages necessary and appropriate in the premises;

c.      For actual damages;

d.      For exemplary damages;

e.      For treble damages;

f.      For attorney fees;

17

g.      For judicial interest from the date of judicial demand; and

h.      For all general and equitable relief.


                        Respectfully submitted,



                        */s/ James M. Garner*
                        JAMES M. GARNER (S.D. TX #13895)
                        DARNELL BLUDWORTH (S.D. TX #18625)
                        **SHER GARNER CAHILL RICHTER KLEIN &
                            HILBERT, L.L.C.**
                        909 Poydras Street, Twenty-Eighth Floor
                        New Orleans, Louisiana  70112
                        Telephone: (504) 299-2100
                        Facsimile: (504) 299-2300

                        **ATTORNEYS FOR PLAINTIFF,
                        TICKETEVENTS.COM, LLC**

18

## VERIFICATION

**STATE OF PENNSYLVANIA**

**COUNTY OF** _MONTGOMERY_

BEFORE ME, the undersigned Notary Public, personally came and appeared DJ Segal,

Managing Member of TicketEvents.com, LLC, who, after being duly sworn, did depose and say

as follows:

That in his capacity as Managing Member of TicketEvents.com, LLC, he has read all the

facts, assertions, allegations, and statements contained in attached Complaint; that all the facts,

assertions, allegations, and all other statements contained in the Complaint are true and correct to

the best of his knowledge, information, and belief; and that this Verification shall serve as due

proof of any statement of claim needed or required by law.

DJ Segal
Managing Member of TicketEvents.com, LLC

SWORN TO AND SUBSCRIBED BEFORE ME

THIS _1st_ DAY OF _October_, 2015.

NOTARY PUBLIC

Print Name: _Norman A. Block_

My commission expires on: _March 30, 2019_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Norman A. Block, Notary Public
Plymouth Twp, Montgomery County
My commission expires March 30, 2019

19